J-S45019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY J. CIENIAWA | : | |
| | : | |
| Appellant | : | No. 455 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 6, 2025
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003592-2023

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: FEBRUARY 10, 2026**

Jeremy J. Cieniawa (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of dealing in proceeds of unlawful activities, receiving stolen property, financial exploitation of an older adult or care-dependent person, theft by deception, securing execution of documents by deception, and endangering the welfare of a care-dependent person.[1]  We affirm.

The trial court summarized the facts adduced at trial as follows:

Sometime in 2020, [Appellant] began residing in a home located at 604 West First Street in Hazleton, Luzerne County, Pennsylvania.  The residence was owned by Frances Diehl [(Ms. Diehl)] for approximately fifty years.  [Ms.] Diehl was in excess of ninety years of age and resided in the residence at the time

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5111(a)(1), 3925(a), 3922.1, 3922(a)(1), 4114, 2713(a)(3).

[Appellant] moved in.  [Appellant] had no relation to [Ms.] Diehl[;] however[,] he began living with her ostensibly to repair the home and provide care for her.  [Appellant] performed no repairs and provided minimal care, if any.

On May 29, 2020, a joint bank account was opened at FNCB Bank in the names of [Ms.] Diehl and Mark Schnorr.[2]  Six days later, [Appellant's] name was added to the account.  Monthly payments representing [Ms.] Diehl's pension and Social Security were deposited into the account.

In 2022, [Appellant] placed a "for sale by owner" sign on the West First Street property with his phone number.  A potential buyer saw the sign and … negotiated a sale price with [Appellant].  On July 12, 2022, the buyer and [Ms.] Diehl signed a sales agreement for the home with [Appellant] present.[3]

The real estate closing took place on October 6, 2022[,] at the office of Toma Abstract in Hazleton.  [Appellant] and his mother attended the closing with [Ms.] Diehl.  Although the sales price was $77,000.00, [Ms.] Diehl received the sum of $73,748.41 after closing costs and outstanding bills associated with the residence were deducted.  [Ms.] Diehl left Toma Abstract with [Appellant and] his mother[,] and the check [representing Ms. Diehl's share of the sale proceeds] was deposited [in Ms. Diehl's and Appellant's joint account] at FNCB Bank the same day.

[The sum of $7,475] was withdrawn from the account the day after closing.  At this point[, FNCB Bank placed] an administrative hold … on the account.  The bank contacted [Appellant,] and he explained that the withdrawals were for a down payment on a mobile home and for the purchase of a storage shed, washer and dryer.  Between October 7 … and October 24, 2022, six withdrawals totaling $32,000.00 were made from the account by [Appellant].  Substantial amounts of money were also transferred from the account using Cash App.  More than seventy withdrawals were made from the joint account … from October 7

_____

[2] Mark Schnorr was Ms. Diehl's next-door neighbor.  N.T., 11/13-14/24, at 71.

[3] Ms. Diehl's primary care physician testified that, during the period leading up to the sale of her residence, Ms. Diehl suffered from dementia that would have been "obvious" to anyone dealing with her.  N.T., 11/13-14/24, at 90.

… through November 1, 2022. At the time the account was closed on November 1, 2022, the remaining balance was $4,802.55.

Trial Court Opinion, 6/2/25, at 1-2 (footnotes added).

The Commonwealth subsequently charged Appellant with the above offenses. **See** Third Amended Information, 11/19/24.[4] The matter proceeded to a jury trial on November 13-14, 2024. At the trial's conclusion, the jury convicted Appellant of the above offenses. On March 6, 2025, the trial court imposed an aggregate sentence of 110 to 270 months' imprisonment.

Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents the following question[5] for our review:

> Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [] Appellant conducted financial transactions which involved the proceeds of unlawful activity with the intent of carrying on that unlawful activity under 18 Pa.C.S.A. § 5111(a)(1)?

Appellant's Brief at 2.

When reviewing a sufficiency claim, this Court

> must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is

---

[4] Though the third amended information was filed on November 19, 2024, the record reflects that the trial court granted the Commonwealth's motion to amend the information before trial commenced on November 13, 2024. **See** Trial Worksheet, 11/13-14/24, at 2.

[5] Appellant's Rule 1925(b) concise statement of matters complained of on appeal identified seven issues. **See** Concise Statement, 5/2/25. Appellant abandoned all but one of those issues in his appellate brief. **See generally** Appellant's Brief.

sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (citation omitted).

Appellant argues the Commonwealth presented insufficient evidence to support his conviction for dealing in proceeds of unlawful activities under 18 Pa.C.S.A. § 5111(a)(1). *See* Appellant's Brief at 12-29. Section 5111(a)(1) defines the offense as follows:

> **(a) Offense defined.**--A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:
>
> > (1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

18 Pa.C.S.A. § 5111(a)(1). Additionally, section 5111(f) sets forth the following relevant definitions:

> **"Knowing that the property involved in a financial transaction represents the proceeds of unlawful activity."** Knowing that the property involved in the transaction represents proceeds from some form, though not necessarily which form, of unlawful activity, regardless of whether or not the activity is specified in this section.
>
> * * *
>
> **"Unlawful activity."** Any activity graded a misdemeanor of the first degree or higher under Federal or State law.

*Id.* § 5111(f).

- 4 -

Appellant maintains the Commonwealth failed to prove "that the funds at issue were derived from an antecedent unlawful activity graded as a misdemeanor of the first degree or higher." Appellant's Brief at 12. Without citing the record, Appellant asserts the trial testimony

> established that the sale of [Ms.] Diehl's residence … was conducted through a legitimate, arms-length real estate closing. Title agents, a notary, and the buyer participated. [Appellant] never had the residence placed in his name before it was sold and the proceeds of the sale were placed directly into [Ms.] Diehl's bank account. The proceeds check was made payable to [Ms.] Diehl and deposited into an account bearing her name. No evidence suggested that the deed or sale documents were fraudulent, forged, or unauthorized. Thus, at the moment the sale proceeds were generated, no "unlawful activity" had occurred. Even if this conduct involved [the] unlawful activity [charged at] Count 7, securing execution of documents by deception [under 18 Pa.C.S.A. § 4114], it still could not constitute the antecedent predicate … of unlawful activity, because Count 7 was graded as [a second-degree misdemeanor].

*Id.* at 25-26. Appellant contends

> [t]he remaining theft-related charges occurred only after the sale proceeds were lawfully deposited into [Ms.] Diehl's account and thus cannot retroactively render those funds unlawful. Accordingly, the Commonwealth failed to prove the existence of "proceeds of unlawful activity" as a matter of law, and Appellant's conviction under [section] 5111 must be vacated and judgment of acquittal entered.

*Id.* at 14. Appellant essentially argues his unlawful activity was limited to withdrawing the sale proceeds from the joint account. *Id.* at 14, 25-26.

The Commonwealth counters that Appellant's unlawful activity did not begin after the deposit of the sale proceeds in the account, but rather began when Appellant entered Ms. Diehl's life, and culminated in the sale itself after

Appellant "unlawfully convinced [Ms. Diehl] to sell her home." Commonwealth Brief at 9-10; *see also id.* at 13-14.[6]

The record belies Appellant's contention that the sale of Ms. Diehl's home was "a legitimate, arms-length" transaction. Appellant's Brief at 25. Our review discloses no record support for Appellant's assertion that his involvement in the sale itself did not constitute unlawful activity sufficient to support his section 5111(a)(1) conviction, or that his unlawful activity began only after the deposit of the sale proceeds in the joint account on October 6, 2022.

The criminal information alleged that each of the above offenses occurred "from on or about the period of … September 1st, 2022[,] through November 8th, 2022…." Third Amended Information, 11/19/24, at 1. These included the three theft-related offenses of receiving stolen property,[7]

---

[6] In its Rule 1925(a) opinion, the trial court determined the Commonwealth presented sufficient evidence to support Appellant's conviction under section 5111(a)(1), but did not address the specific argument Appellant now advances. **See** Trial Court Opinion, 6/2/25, at 9-10.

[7] 18 Pa.C.S.A. § 3925(a) provides that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a); **see also id.** § 3925(b) (defining "receiving" as "acquiring possession, control or title, or lending on the security of the property.").

financial exploitation of an older adult or care-dependent person,[8] and theft by deception.[9] *Id.* Each of these offenses was graded as a third-degree felony. *Id.* The jury convicted Appellant of all three theft-related offenses.

Our review discloses that the record, viewed in the light most favorable to the Commonwealth as the verdict winner, supports a conclusion that each of the three theft-related offenses encompassed Appellant's conduct in orchestrating the sale of Ms. Diehl's residence and depositing the proceeds in

_____

[8] 18 Pa.C.S.A. § 3922.1 defines "financial exploitation," in pertinent part, as follows:

> The wrongful or unauthorized taking or attempt to take by withholding, appropriating, concealing or using the money, assets or property of an older adult or care-dependent person, … including business transactions to:
>
> (1) obtain or attempt to obtain control, through deception, intimidation or undue influence, over the older adult's or care-dependent person's money, assets or property to deprive the older adult or care-dependent person of the ownership, use, benefit or possession of the older adult's or care-dependent person's money, assets or property; or
>
> (2) convert or attempt to convert money, assets or property of the older adult or care-dependent person to deprive the older adult or care-dependent person of the ownership, use, benefit or possession of the older adult's or care-dependent person's money, assets or property.

18 Pa.C.S.A. § 3922.1(f).

[9] 18 Pa.C.S.A. § 3922(a)(1) provides that "[a] person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally … creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind…." 18 Pa.C.S.A. § 3922(a)(1).

an account bearing his own name. The evidence established that Appellant moved into Ms. Diehl's residence "ostensibly to repair the home and provide care for her," but "performed no repairs and provided minimal care, if any." Trial Court Opinion, 6/2/25, at 1. Appellant thereafter added his name to Ms. Diehl's bank account; put her residence up for sale; secured a buyer; caused Ms. Diehl to execute the sales agreement and closing documents[10]; and ensured the sale proceeds were deposited into the joint account bearing his name, thus securing his own possession and control of those proceeds. *Id.* at 2. This conduct constitutes "unlawful activity," and renders the sale proceeds "proceeds of unlawful activity," sufficient to support Appellant's conviction under section 5111(a)(1). Appellant's sole issue therefore merits no relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

---

[10] Despite his argument that the closing was "a legitimate, arms-length real estate" transaction, Appellant's Brief at 25, Appellant acknowledges his conviction for securing execution of documents by deception involved his conduct in causing Ms. Diehl to execute the closing documents. *See id.* at 25-26; *see also* Third Amended Information, 11/19/24, at 1 (alleging Appellant violated 18 Pa.C.S.A. § 4114 when "he caused [Ms.] Diehl to execute documents permitting the sale of her house…."). Section 4114 provides that "[a] person commits a misdemeanor of the second degree if **by deception** he causes another to execute any instrument affecting or purporting to affect or likely to affect the pecuniary interest of any person." 18 Pa.C.S.A. § 4114 (emphasis added). Appellant does not challenge the sufficiency of the evidence supporting his section 4114 conviction. Our review discloses the same deception underlying this offense—the commission of which was completed at the closing—also supports the deception elements of Appellant's convictions for theft by deception and financial exploitation of an older adult or care-dependent person. *See* 18 Pa.C.S.A. §§ 3922(a)(1), 3922.1(f)(1).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/10/2026